UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DEMMLER, Individually and On Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| ACH FOOD COMPANIES, INC., | |
| Defendant. | |

Plaintiff, Joseph Demmler ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant, ACH Food Companies, Inc. ("Defendant"), and alleges, on personal knowledge as to all facts related to himself and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1. Plaintiff brings this action individually and on behalf of a proposed class ("Class"), as more fully defined below, of similarly situated consumers in Massachusetts seeking to redress the pervasive pattern of deceptive, false, misleading, and otherwise improper advertising, sale, and marketing practices that Defendant engaged in regarding its Weber BBQ Sauce products ("Weber BBQ Sauce(s)" or "Product(s)").

2. Throughout the proposed class period, Defendant has manufactured, marketed, and sold Weber BBQ Sauces in the following flavors: Original BBQ Sauce, Buzz'N Honey BBQ Sauce, Hickory Smoke BBQ Sauce, Real Molasses BBQ Sauce and Kick'N Spicy BBQ Sauce.

3. At all relevant times, Defendant has unlawfully, unfairly, misleadingly, and/or deceptively represented that its Products are "All Natural," when, in fact, they contain caramel color, which, regardless of its source, renders the Products incapable of being labeled as "Natural" or "All Natural."

4. Although the Products are not "All Natural," Defendant has, at all relevant times, prominently displayed the words "All Natural" in large font on the front bottle label of every Product sold in Massachusetts and throughout the United States. Furthermore, the Product page of Defendant's website, at all relevant times, has not only showcased the Products' "All Natural" labeling, it has also emphasized the "All Natural" claim in its description.

5. Defendant has recognized that, based on a shift in consumer preference toward healthier food products, there is a financial benefit to be derived in selling healthier products, meaning products that are "All Natural." The term "natural" adds a premium to food products and makes them appear healthier and safer.

6. The claim "natural," which is stamped on countless food labels, is widely misunderstood by consumers, according to a survey of 1,000 people from the Consumer Reports National Research Center. The survey found that nearly 60 percent of people look for the term when they shop for food, probably because they think the products labeled "natural" are better for them than products without that claim. "About two-thirds believe it means a processed food has no artificial ingredients, pesticides, or genetically modified organisms, and more than 80 percent believe that it should mean those things."[1]

7. Accordingly, Defendant purposely misrepresented that its Products are "All Natural" to consumers as a marketing strategy. As a result of these misrepresentations regarding

---

[1] *Say No To Natural On Food Labels,* ConsumerReports.org, June 16, 2014, http://www.consumerreports.org/cro/news/2014/06/say-no-to-natural-on-food-labels/index.htm

its Products, Defendant deceived consumers, including Plaintiff and members of the Class, into believing that the Products were substantially heathier and safer than they actually are.

8. Had Plaintiff and the Class been aware that the Products were not "All Natural," they would not have purchased the Products, or would have paid less for the Products.

9. As a result of Defendant's false and misleading statements, Plaintiff and the Class bought tens of thousands of the Products and have suffered injury in fact as a result of Defendant's false representations that the Products are "All Natural." Additionally, Defendant acquired money or property from Plaintiff and the Class as a result of its unfair, deceptive, and unlawful conduct as alleged herein.

10. Plaintiff brings this action, on behalf of himself and other similarly situated Massachusetts consumers, to halt the dissemination of this false and misleading advertising, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Products. Plaintiff alleges violations of Massachusetts General Laws, Chapter 93A, § 2, Massachusetts General Laws, Chapter 94 §§ 187 and 190 and 105 CMR 520.116 (actionable through c. 93A) and, alternatively, asserts a claim for unjust enrichment.

**JURISDICTION AND VENUE**

11. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiff and certain members of the Class are citizens of states different from that of Defendant.

12. This Court has personal jurisdiction over Defendant because Defendant has conducted and continues to conduct business in the Commonwealth of Massachusetts, and

because Defendant has committed the acts and omissions complained of herein in the Commonwealth of Massachusetts, which is also the state in which Plaintiff resides and is a citizen.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391 because:

   a. Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of Weber BBQ Sauces here;

   b. Defendant does substantial business in this District; and

   c. Plaintiff resides in this District.

## PARTIES

14. Plaintiff is, and at all times relevant to this action has been, a resident of Wellesley, Massachusetts, and, thus, is a citizen of Massachusetts. Prior to purchasing Weber BBQ Sauces, Plaintiff was exposed to and saw the "All Natural" claim on the bottle label of Defendant's Products, and as a result, purchased the Products. Plaintiff suffered injury in fact as a result of Defendant's false and misleading conduct.

15. Defendant is a Delaware corporation with its principal place of business located at 7171 Goodlett Farms Parkway, Cordova, Tennessee 38016-4909. Therefore, Defendant is a citizen of Tennessee. Defendant promotes, markets, distributes, and sells Weber BBQ Sauces throughout the United States, including to consumers in the Commonwealth of Massachusetts.

## SUBSTANTIVE ALLEGATIONS

**A.  Defendant Deceptively Labels The Products As "All Natural"**

16. Defendant has labeled its Weber BBQ Sauces as "All Natural." The labeling and marketing on the Products has communicated a straightforward, material message that its Products are made out of 100% natural ingredients.

17.     The core deceptive, false, and misleading representations that the Products are "All Natural" has been prominently and conspicuously displayed on the front of each individual bottle in large and all-caps font.  By way of illustration, the "All Natural" claim has appeared on the Products' bottles like this:



And on its website like this:

> **Original BBQ Sauce**
>
> Delicious BBQ starts with a delicious sauce. The thick and bold flavor of our Original sauce comes from the perfect blend of spices and is sweetened with thick molasses to make the sauce stick to food! This All Natural BBQ sauce will be a hit with the whole family.

18.     By prominently and conspicuously placing the "All Natural" claim on its Products' bottles, emphasizing the claim by conveying to consumers its awareness of what ingredients are considered natural and/or unnatural, and showcasing and underscoring the claim on its website,

Defendant has ensured that the consuming public purchasing the Products is exposed to its "All Natural" representation.

### B.     The Products Are Not "All Natural" Because They Contain Caramel Color

19.     Caramel color is an unnatural, synthetic, and/or artificial ingredient and its presence in the Products causes the Products to *not* be "All Natural."  Despite the addition of caramel color, Defendant knowingly marketed the Products as "All Natural."

20.     The Merriam-Webster Dictionary defines "Natural" as "not having any extra substances or chemicals added: not containing anything artificial."

21.     While the U.S. Food and Drug Administration ("FDA") "has not developed a definition for use of the term natural or its derivatives,"[2] the FDA has considered "natural" to mean merely that "nothing artificial or synthetic (*including colors,* regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (1993) (emphasis added).

22.     Synthetic is defined as:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes. 7 C.F.R. § 205.2.

23.     Specifically regarding color additives like caramel color, the FDA explained, "[s]ince all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"[3]

---

[2] *What is the meaning of 'natural' on the label of food?,* U.S. FOOD AND DRUG ADMINISTRATION, http://www.fda.gov/aboutfda/transparency/basics/ucm214868.htm.

[3] *CPG Sec. 587.100 Label Declaration of Certification-Exempt Color Additives*, U.S. FOOD AND DRUG ADMINISTRATION, http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074644.

24.     Furthermore, according to Massachusetts regulations: "'Natural food' means food which in its processing has ***not*** been treated with preservatives, antibiotics, synthetic additives, artificial flavoring, ***artificial coloring***, or has been processed in such a manner so that it become [sic] significantly less nutritive."  105 CMR 520.116 (emphasis added).

25.     Accordingly, Weber BBQ Sauces are not "All Natural" because they contain caramel color.

### C.     Defendant's False and Misleading Labels Misled Consumers

26.     Reasonable consumers frequently consider food label representations and information to be important in making their purchase decisions.

27.     Reasonable consumers attach importance to an "All Natural" representation when making their purchase decisions.  Thus, a representation that a product is "All Natural" is material to a reasonable consumer.  According to Consumers Union, "Eighty-six percent of consumers expect the 'natural' label to mean that processed food does not contain any artificial ingredients."[4]

28.     Defendant decided that its success and profitability were dependent on its ability to satisfy the emerging consumer demand for healthier eating options – food products that are made out of natural ingredients.  Therefore, Defendant engaged in a widespread marketing campaign to portray its Products as "All Natural" to sell them at a premium and/or to increase sales of its Products.

---

[4] *Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 CFR Part 260, Notice of the Federal Trade Commission*, CONSUMER UNION, http://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf.

29. Defendant knew and intended that consumers would pay a premium for and purchase the "All Natural" labeled Products over comparable products that are not labeled as "All Natural."

30. As a result of Defendant's affirmative misrepresentations, consumers, including Plaintiff, purchased the Weber BBQ Sauces over comparable products that did not make the "all natural" claim, believing that the Weber BBQ Sauces consisted strictly of natural ingredients, and they paid a premium for the purportedly "all natural" Weber BBQ Sauces, over the lesser prices charged for the comparable products.

31. Plaintiff and the Class did not obtain the full value of the advertised Products due to Defendant's misrepresentations and/or omissions.

32. Had Plaintiff and the Class been aware that the Products were not "all natural," they would not have purchased or paid a premium for the Products.

33. For all of the reasons stated above, Plaintiff and the Class suffered ascertainable loss and injury in fact as a result of Defendant's wrongful conduct.

### PLAINTIFF'S EXPERIENCE WITH WEBER BBQ SAUCE

34. Plaintiff purchased the Products in December 2014 based on Defendant's representations that the Product was "All Natural," including Real Molasses BBQ Sauce. Plaintiff purchased the Products at a Stop & Shop in Framingham, Massachusetts.

35. The label on the Products Plaintiff purchased contained the representations that the Products are "All Natural." Plaintiff believed Defendant's representations that the Products are "All Natural" to mean that the Products did not contain any ingredients or additives that would render the Product "unnatural." The "All Natural" claims were material to Plaintiff in making his purchase decision.

36. Plaintiff was willing to pay more for the Products because of Defendant's representations that the Products were "All Natural." Plaintiff would not have paid as much as he did for the Products, or would have purchased alternative products, if Defendant did not claim the Products were "All Natural."

37. Plaintiff paid for the "All Natural" Products, but received Products that were not "All Natural."

38. Therefore, the Products that Plaintiff received were worth less than what he paid for them and he suffered an ascertainable loss, in the amount of the purchase price of the Products, as a result of Defendant's wrongful conduct described herein.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this lawsuit on behalf of himself and the proposed Class members pursuant to Federal Rule of Civil Procedure 23(b)(3). The proposed Class consists of:

> All persons who purchased Weber BBQ Sauce in the Commonwealth of Massachusetts since October 13, 2011(the "Class").

40. Excluded from the Class are: (1) Defendant, as well as its subsidiaries, affiliates, employees, officers, directors, assigns, and successors, and any entity in which Defendant has a controlling interest; (2) the Judge to whom this case is assigned to and any member of the Judge's immediate family; (3) anyone who purchased the Products for the purpose of resale; and (4) anyone asserting claims for personal injury. Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

41. **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. Plaintiff reasonably estimates that there are thousands of Class members.

42. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class. These common questions predominate over any questions affecting only individual Class members and include, but are not limited, to the following:

   a. whether Defendant falsely and/or misleadingly misrepresented the Products as being "All Natural";

   b. whether Defendant's misrepresentations are likely to deceive reasonable consumers;

   c. whether Defendant violated Massachusetts General Laws, c. 93A,§ 2;

   d. whether Defendant violated Massachusetts General Laws, c. 94, §§ 187 and 190;

   e. whether Defendant has been unjustly enriched by its conduct alleged herein; and

   f. whether Plaintiff and Class members have sustained injury and the proper measure of that injury.

43. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class, as all Class members are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Class, purchased the Products after exposure to the same material misrepresentations and/or omissions appearing on the Products' bottle, on Defendant's website, and in other forms of advertising. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Class.

44. **Adequacy**: Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interest of the other members of the proposed Class. Plaintiff has retained counsel competent and experienced in consumer and class action litigation, and Plaintiff will prosecute this action vigorously.

45. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expenses of individual prosecution

of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually redress the wrongs done to them effectively. Even if the members of the Class could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents no management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

46. Unless a class is certified, Defendant will improperly retain monies received, as a result of its conduct, from Plaintiff and members of the Class.

## COUNT I
### (Violation of Massachusetts General Laws ("M.G.L."), Chapter 93A, § 2 On Behalf Of The Class)

47. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

48. In accordance with M.G.L., c. 93A, § 9(3), on June 4, 2015, a proper written demand for relief was made on Defendant under M.G.L., Chapter 93A, on behalf of Plaintiff and the Class.

49. Defendant did not make a reasonable offer of relief to the Class.

50. M.G.L., c. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L., c. 93A § 9 permits any consumer injured by a violation of M.G.L., c. 93A § 2 to bring a civil action, including a class action, for damages and injunctive relief.

51. Defendant engaged in unfair and deceptive acts and/or practices in the conduct of trade or commerce in violation of M.G.L., c. 93A § 2.

52. Defendant's unfair and deceptive scheme to mislead consumers was comprised of countless unfair and deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and the Class, by means of its advertising, marketing and on the packaging and labeling of the Products, that they are "All Natural," when, in fact, they are not because they contain caramel color. These unfair and deceptive acts and practices have a capacity, tendency, and/or likelihood to deceive or mislead reasonable consumers.

53. Defendant's conduct, as alleged herein, violates various regulations promulgated by the Massachusetts Attorney General pursuant to c. 93A, § 2(c) including the following:

- 940 C.M.R. § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered);

- 940 C.M.R. § 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

- 940 C.M.R. §3.05(2) (prohibiting the use of any advertisement "which would mislead or tend to mislead buyers or prospective buyers, through pictorial representations or in any other manner, as to the product being offered for sale");

- 940 C.M.R. § 3.08(2) (providing that it "shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty");

- 940 C.M.R. § 3.16(2) (providing that it is a violation of c. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction"); and

- 940 C.M.R. § 3.16(3) (providing that an act or practice violates c. 93A, § 2 if it "fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the

Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection").

54. Defendant's acts also violate M.G.L., c. 94 §§ 187 and 190 and 105 C.M.R. § 520, and, as such, are unfair and deceptive, in violation of M.G.L., c. 93A, § 2.

55. M.G.L., c. 94 § 187 provides, *inter alia*, that: "Food shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular . . . if the package containing it or its label bears any statement, design or device regarding the ingredients or the substances contained therein which is false or misleading in any particular."

56. M.G.L., c. 94 § 190 bars the manufacture, sale, delivery or offer of delivery of misbranded food.

57. Pursuant to 105 C.M.R. 520.116(A)(1) (C), it is illegal to sell, advertise, distribute for sale, traffic, trade, transport, display for sale, offer for sale, deliver for sale, or intend to sell any food products as "natural," or with words of similar meaning, unless such food complies with the Commonwealth of Massachusetts' definition of natural food. Doing so results in the food being misbranded. 105 C.M.R. 520.116(C); M.G.L., c. 94 § 187.

58. Pursuant to 940 C.M.R. § 3.16(3), violations of the foregoing provisions (M.G.L. c. 94, §§ 187 and 190 and 105 C.M.R. § 520) are also violations of c. 93A, § 2.

59. Defendant's violations of M.G.L., c. 93A were willful and knowing.

60. As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff and the Class were injured and suffered damages and are entitled to actual or statutory damages, treble damages, attorneys' fees and costs. The injuries suffered by Plaintiff and the Class include, but are not limited to, paying a premium price for Defendant's falsely advertised Weber BBQ Sauces, and by the unlawful profits Defendant earned from the sales of these falsely advertised Products.

61. Pursuant to M.G.L., c. 93A, § 9, Plaintiff, on behalf of himself and the Class, seeks an Order of this Court:

 a. Awarding damages to Plaintiff and Class members; and

 b. Disgorging and restoring all monies that have been acquired by Defendant as a result of such unfair and/or deceptive acts or practices.

## COUNT II
### (Unjust Enrichment On Behalf Of The Class)

62. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

63. This claim is asserted in the alternative on behalf of Plaintiff and the Class, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

64. As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched. Specifically, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiff and the Class). Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Class.

65. It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration and other monies obtained by and from its wrongful conduct in promoting, marketing, distributing, and selling Weber BBQ Sauces.

66. Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class, prays for judgment as follows:

a. Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and his counsel as Class counsel;

b. Actual or statutory damages, whichever results in a greater recovery, and multiple damages;

c. Restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class as permitted by applicable law;

d. Statutory pre-judgment and post-judgment interest on any amounts;

e. Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

f. Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: October 13, 2015                                Respectfully submitted,

/s/ David Pastor
David Pastor (BBO # 391000)
PASTOR LAW OFFICE LLP
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Telephone:  617-742-9700
Facsimile:  617-742-9701
Email:  dpastor@pastorlawoffice.com

Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
1640 Town Center Circle
Suite 216
Weston, FL 33326
Telephone: 954/515-0123
Facsimile: 866/300-7367
Email: nzipperian@sfmslaw.com

Scott R. Shepherd
James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone: 610/891-9880
Facsimile: 866/300-7367
Email: sshepherd@sfmslaw.com
       jshah@sfmslaw.com

Jeffrey S. Feinberg (N.Y. Bar No. 4051165)
THE FEINBERG LAW FIRM
The Woolworth Building
233 Broadway
Suite 2701
New York, NY 10279
Telephone: 212/372-0297
Facsimile: 646/417-7890
Email: jfeinberg@nfcounsel.com

*Attorneys for Plaintiff*