UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH DEMMLER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil No. 15-13556-LTS |
| ACH FOOD COMPANIES, INC., | ) ) |  |
| Defendant. | ) ) |  |

MEMORANDUM AND ORDER ON MOTION TO DISMISS,
OR ALTERNATIVELY FOR SUMMARY JUDGMENT (DOC. NO. 14)

June 9, 2016

SOROKIN, J.

Plaintiff Joseph Demmler ("Demmler") brings this action, individually and on behalf of all others similarly situated, against Defendant ACH Food Companies, Inc. ("ACH"), stemming from allegedly false labeling ACH placed on bottles of barbecue sauce. ACH filed this Motion to Dismiss, or Alternatively for Summary Judgment, Doc. No. 14, which Demmler opposed. Doc. No. 22. ACH filed a Reply Brief, Doc. No. 25, the parties filed supplemental briefings reflecting developments in relevant case law, Doc. Nos. 32, 34, 38, 41, 44, and the Court held a hearing on the motion. Doc. No. 47. After careful consideration of the parties' briefs and arguments, the motion is ALLOWED.

I.      LEGAL BACKGROUND

ACH features both jurisdictional and merits-based arguments in support of its motion. See Doc. 15. Regarding jurisdiction, ACH argues that its "unconditionally tendered payment of $75" to Demmler mooted this case. Id. at 12-13. Because the Court must satisfy itself that

Article III jurisdiction exists before examining the merits, Redfern v. Napolitano, 727 F.3d 77, 82 (1st Cir. 2013), the Court addresses the jurisdictional dispute first.

As Federal Rule of Civil Procedure 12(b)(1) provides "[t]he proper vehicle for challenging a court's subject-matter jurisdiction," including on mootness grounds, Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001), the Court analyzes ACH's motion under the 12(b)(1) standard. And because ACH's motion "involves factual questions, the court engaged in a two-part inquiry." Torres-Negron v. J & N Records, 504 F.3d 151, 162 (1st Cir. 2007). "First, the court must determine whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action." Id. at 163. Here, they do not. Whether Demmler's claims are moot depends on factual issues irrelevant to Demmler's ability to prove his underlying claims.

Because "the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim," the Court proceeds to the second step of the 12(b)(1) inquiry. See id. These inquiries "permit[] (indeed, demand[]) differential factfinding," and "the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Valentin, 254 F.3d at 363. And "[i]n conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." Id.; see also Torres-Negron, 504 F.3d at 163 (noting that "the trial court may proceed as it never could under [Federal Rule of Procedure] 12(b)(6) . . . . Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—it's very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." (quoting Lawrence v.

Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990))).  Having described the relevant legal framework, the Court now turns to the relevant facts.

II.     FACTUAL BACKGROUND

The parties do not dispute the facts pertinent to the mootness inquiry.  ACH has manufactured, marketed, and sold Weber BBQ Sauces in five different flavors: Original BBQ Sauce, Buzz'N Honey BBQ Sauce, Hickory Smoke BBQ Sauce, Real Molasses BBQ Sauce, and Kick'N Spicy BBQ Sauce (the "Products").  Doc. No. 1 ¶ 2.  The bottles "prominently display[] the words 'All Natural' in large font on the front bottle of every Product sold in Massachusetts and throughout the United States."  Id. ¶ 4.  ACH also "showcased the Products' 'All Natural' labeling, [and] has also emphasized the 'All Natural' claim in its descriptions" on its website.  Id.  Notwithstanding these "All Natural" labels, the Products contain caramel color.  Id. ¶ 3.

Demmler "purchased the Products in December 2014 based on [ACH]'s representations that the Product was 'All Natural.'"  Id. ¶ 34.  He believed that the "All Natural" label "mean[t] that the Products did not contain any ingredients or additives that would render the Product 'unnatural,'" and the "All Natural" designation was material to Demmler's purchase decision.  Id. ¶ 35.  Demmler alleges that the presence of caramel color rendered the Products "not 'All Natural.'"  Id. ¶ 37.

On June 4, 2015, Demmler's attorney sent ACH a Demand for Relief Pursuant to M.G.L., Chapter 93A, § 9(3).  Doc. No. 17-1 at 1.  The letter was from both Demmler individually and "as a representative of a class of all persons similarly situated."  Id.  The letter alleged that the Product's "All Natural" labeling violated Massachusetts law, specifically various provisions under Mass. Gen. Laws ch. 93A.  Id. at 2-3.  The letter then provided an itemized "Demand for Relief."  Id. at 4.  These demands included compensation to Demmler and Class members for

actual damages (of the greater of money spent on Product purchases or statutory damages of $25.00), modification of the Products' labeling, and reimbursement for costs and attorneys' fees. Id.

On June 19, 2015, ACH's attorney responded to the letter by tendering a $75 check. Doc. No. 17-2. The letter stated that "ACH is willing to offer" a refund, and characterized the check as "the extent of [ACH's] willingness to compromise in the circumstances." Id. However, the letter imposed no conditions or restrictions on the check it enclosed, either in the letter or on the face of the check. Id.[1]

Demmler's attorney then replied on July 2, 2015. Doc. No. 17-3 at 1. He rejected the check on the grounds that ACH offered relief only to Demmler, and not to the class as well. Id. The parties continued to exchange letters, see Doc. Nos. 17-4, 17-5, until November 3, 2015, when ACH's attorney again wrote to Demmler's attorney to say that Demmler's rejection of the $75 check mooted his case, and that ACH would move for dismissal of Demmler's lawsuit (which he filed on October 13, 2015, see Doc. No. 1). Doc. No. 17-6 at 1. This letter included a second, new, $75 certified check. Id.; see id. at 2 (a copy of the certified check). ACH sent this check, like the first, without condition or restriction. See id. Finally, Demmler's attorney responded to that letter—and the check that came with it—on November 9, 2015. Doc. No. 17-7 at 1. Just like he did four months prior, Demmler's attorney rejected the $75 check on the grounds that it provided relief only to Demmler individually, and not on behalf of the class. The next day, November 10, 2015, ACH filed the instant motion to dismiss. See Doc. No. 14.

III.  DISCUSSION

---

[1] While some of the letter's language may have suggested a conditional offer to resolve the parties' dispute, the Court finds that ACH's unrestricted delivery of the check to Demmler was in fact an unconditional payment.

Demmler brings two claims for relief-a ch. 93A claim, Doc. No. 1 at 11, and an unjust enrichment claim.  Id. at 14.  He itemizes his prayer for relief as follows:

a. Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and his counsel as Class counsel;
b. Actual or statutory damages, whichever results in a greater recovery, and multiple damages;
c. Restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class as permitted by applicable law;
d. Statutory pre-judgment and post-judgment interest on any amounts;
e. Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and
f. Such other relief as the Court may deem just and proper.

Id. at 15.[2]

Nowhere in the Complaint does Demmler seek a declaratory judgment or injunctive relief, perhaps because ACH has represented—from its initial response to the first 93A demand letter through its papers on the motion to dismiss—that it discontinued the products at issue prior to receiving the initial 93A demand letter.  See, e.g., Doc. No. 17-2 at 1 (noting, in response to Demmler's June 4, 2015 letter that ACH has "discontinued use of the challenged 'all natural' statement effective October 2014"); Doc. No. 17-5 at 1 (elaborating on ACH's discontinuance of the challenged labeling in a June 19, 2015 letter to Demmler); Doc. No. 16 ¶ 4 (same, in an affidavit filed in conjunction with ACH's motion); Doc. No. 15 at 14 (arguing that "ACH decided to remove the 'all natural' labeling from the Sauces nearly a year before suit was filed and eight months prior to receipt of plaintiff's demand letter") (emphasis in original).

ACH argues that its $75 check to Demmler afforded him triple the "statutory damages requested (and allowed) under Chapter 93A § 9(3); a sum greater than any monetary relief theoretically available on the facts alleged; and an amount equal to the purchase price of at least

---

[2] Because Demmler does not seek punitive damages, the Court need not here resolve what impact such a request would have on the mootness issue.

20 bottles (or roughly 3 cases, and then some) of the Sauces in question." Doc. No. 15 at 12. Consequently, ACH posits that its "tender of payment mooted Demmler's individual and class restitution claims." Id. at 13. Demmler does not assert that he, individually, is entitled to more money than this. See Doc. No. 22. Rather, he both characterizes the tender as an offer of settlement which he did not accept, and contends that the tender failed to provide relief for the class. See id. at 11-14. Accordingly, Demmler argues, the case is not moot. Id.

"A case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016) (internal citations and quotations omitted).[3] In looking at whether such concrete interests exist even after ACH tendered the $75 check, the Court first addresses Demmler's individual claims, before proceeding to the class claims.

A.   Individual Claims

Notwithstanding Demmler's assertions otherwise, the $75 check did not represent a settlement offer—ACH sent the check unprompted, and did not impose any preconditions on Demmler for doing so. This distinction makes all the difference.

The Supreme Court's latest foray into the mootness doctrine was Campbell-Ewald. That case involved a class action against a government contractor, Campbell-Ewald, who allegedly sent Navy recruitment text messages in violation of the Telephone Consumer Protection Act

---

[3] At oral argument, ACH, drawing a distinction between standing and mootness, asserted that its first check redressed Demmler's alleged injury, thereby precluding any standing on his part to bring this case, while the second check, delivered after Demmler filed suit, rendered Demmler's then-live claim (if the first check somehow failed) moot. For purposes of resolving the present motion, the Court need not resolve any potential differences. Both checks unconditionally provided Demmler $75 and therefore, in the text, the Court refers, unless expressly noted otherwise, only to ACH's payment of $75 without distinguishing between the two checks.

("TCPA"). See id. at 666-67. Before the plaintiff, Jose Gomez ("Gomez") had filed a motion for class certification, the defendant contractor "proposed to settle Gomez's individual claim and filed an offer of judgment pursuant to Federal Rule of Civil Procedure 68." Id. at 667. The offer both provided Gomez with all the damages he was entitled to and included "a stipulated injunction in which [Campbell-Ewald] agreed to be barred from sending text messages in violation of the TCPA." See id. at 667-68. Gomez did not accept the offer, and it lapsed after fourteen days, as Rule 68 provided. Id. at 668. Campbell-Ewald then filed a 12(b)(1) motion, arguing that "[n]o Article III case or controversy remained . . . because its offer mooted Gomez's individual claim by providing him with complete relief." Id.

The Court disagreed, and held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." Id. at 672. The Court relied heavily on both the law of contracts and the specifics of Rule 68, nothing that Campbell-Ewald's offer, "once rejected, had no continuing efficacy," and that "[a]bsent Gomez's acceptance, [Campbell-Ewald's] settlement offer remained only a proposal, binding neither Campbell nor Gomez." Id. at 670. "In short," the Court concluded, "with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset." Id. at 670-71.

While the Court held unambiguously that an unaccepted Rule 68 offer of judgment does not moot a case, it went no further, reciting that this "ruling suffices to decide this case." Id. at 672. The dissenting judges, to that extent, agreed, noting "[t]he good news . . . that this case is limited to its facts." Id. at 683 (Roberts, C.J., dissenting). Indeed, the Court specifically did not "decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." Id. at 672. Accordingly, Campbell-Ewald does not

defeat ACH's motion. And because ACH did actually tender full relief to Demmler, this Court cannot offer Demmler individually any more relief on his underlying claim than ACH provided when it tendered the $75 check. This dynamic served to moot the case. See Bais Yaakov of Spring Valley v. ACT, Inc., 798 F.3d 46, 54 (1st Cir. 2015) ("In many cases involving damages in a certain amount as the only remedy, delivery of a bank check might get around the infirmities in using a Rule 68 offer."); see also South Orange Chiropractic Ctr., LLC v. Cayan LLC, No. 15-13069-PBS, 2016 WL 1441791, at *5 (concluding that "th[e] named plaintiff no longer ha[d] the requisite 'live claim' because Defendant ha[d] offered to deposit a check with the court, to satisfy all of Plaintiff's individual claims (and more), and to have the district court enter judgment in Plaintiff's favor.").[4]

      Several other points bear consideration. First, Demmler's refusal to accept the $75 is immaterial. The question under Article III is whether a live case or controversy exists, and the mere fact that Demmler did not accept unconditionally-provided remediation does not extend the life of the dispute. See Campbell-Ewald, 136 S. Ct. at 671 (citing California v. San Pablo & Tulare R. Co., 149 U.S. 308 (1893), Little v. Bowers, 134 U.S. 547 (1890), and San Mateo Cty. v. S. Pac. R. Co., 116 U.S. 138 (1885) for the proposition that "actual payment of the taxes for which suit was brought . . . had fully satisfied the asserted tax claims, and so extinguished them.").[5]

---

[4] While ACH did not go as far as to actually deposit the $75 check in an account payable to Demmler, this is a distinction without a difference. ACH delivered the check to Demmler (or, more precisely, his attorney), entitling him to full possession of the $75. That sufficed to fully redress him for any claim he had to that money.

[5] This in part explains the differing treatment of a settlement offer and an unconditional remedy for the injuries a Plaintiff suffers. A defendant might condition, for example, satisfaction on the Plaintiff's agreement to avoid litigation over whether the claim has become moot. In such a circumstance, the offer, like a Rule 68 offer, does not render the case moot, because that Plaintiff's harm is remedied only if it agrees to the mootness determination.

Second, unlike the hypothetical on which Campbell-Ewald reserved (and which Chief Judge Saris reached in South Orange Chiropractor), Demmler does not seek the issuance of judgment for the plaintiff. However, another Supreme Court case, Already, LLC v. Nike, Inc., 133 S. Ct. 721 (2013), precludes the lack of a judgment from serving to keep alive an otherwise-moot claim.

Already involved litigation over trademarks between Nike and Already, two athletic footwear companies. See 133 S. Ct. at 725. Nike sued Already for trademark infringement, Already counterclaimed that Nike's trademark was invalid, and then, "four months after Already counterclaimed, Nike issued a 'Covenant Not to Sue.'" Id. Nike subsequently voluntarily dismissed its claims with prejudice and moved to dismiss Already's invalidity counterclaim on mootness grounds, which Already contested. Id. The Court noted that Nike's Covenant was, by its terms, "unconditional and irrevocable," id. at 728, and that "Already's only legally cognizable injury—the fact that Nike took steps to enforce its trademark—[wa]s now gone and, given the breadth of the covenant, c[ould not] reasonably be expected to recur." Id. at 732. Accordingly, the Court held that "the case is clearly moot." Id. This conclusion, notwithstanding the district court's failure to enter a judgment enjoining Nike from suing Already for trademark infringement (or indeed any prospective judgment against Nike at all), underscores the non-dispositive nature of the absence of a judgment. If anything, Demmler's claim to a judgment is weaker than Already's since, unlike Demmler (who seeks no prospective or declaratory relief), Already specifically counterclaimed for a declaratory judgment. Compare Doc. No. 1 ¶¶ 61, 66 with Already, 133 S. Ct. at 725.[6]

---

[6] Justice Alito, dissenting in Campbell-Ewald, made a similar observation regarding Already and the necessity of a judgment. See 136 S. Ct. at 685 n.3 (Alito, J., dissenting).

9

Third, Demmler makes some reference to the potential receipt of attorneys' fees as a prevailing party as an additional source of this case's viability. See Doc. No. 22 at 5 n. 2. However, Demmler's "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990). While Lewis considered an attorneys' fee award under § 1988, its analysis controls here given the similar structure of ch. 93A's attorney's fees provision. Compare 42 U.S.C. § 1988 ("In any action or proceeding to enforce [certain legislative provisions], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .") with Mass. Gen. Laws ch. 93A, § 9(4) ("If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall . . . be awarded reasonable attorney's fees and costs incurred in connection with said action . . . .").

Bais Yaakov has recognized another individual interest related to litigation expenses, the "interest in sharing attorney's fees with other class members." 798 F.3d at 49; see also id. at 49 n.2 (characterizing Roper as addressing, at least in part, "an individual interest" a plaintiff may have "in class certification and litigation") (emphasis in original). Bais Yaakov noted that in Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, (1980), "the [Supreme] Court held that the entry of judgment, over the putative class plaintiffs' objections, of full payment on their individual claims after a motion for class certification had been denied 'did not moot their private case or controversy,' and that they could still appeal the denial of the certification motion." Bais Yaakov, 798 F.3d at 49 (quoting Roper, 445 U.S. at 340). While "[t]he Court gave several possible reasons for its holding," Bais Yaakov, 798 F.3d at 49, a later case, Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013), "has instructed . . . that the actual holding

10

in Roper turned . . . on the plaintiffs' 'ongoing, personal economic stake in the substantive controversy—namely, to shift a portion of attorney's fees and expenses to successful class litigants.'" Bais Yaakov, 798 F.3d at 49 (quoting Genesis Healthcare, 133 S. Ct. at 1532).

Lewis's rejection of an interest in attorney's fees as sufficient to stave off mootness does create at least potential tension with Roper, and Genesis Healthcare specifically recognized this. See 133 S. Ct. at 1532 n.5 (observing that "[b]ecause Roper is distinguishable on the facts, [it] need not consider its continuing validity in light of [its] subsequent decision in Lewis"); accord Bais Yaakov, 798 F.3d at 50 (noting that Roper "has been expressly called into question by . . . Genesis Healthcare"). However, "[t]he Supreme Court's questioning of Roper's continued vitality does not grant [this Court] the prerogative of declaring Roper overruled," Bais Yaakov. 798 F.3d at 50. Following the First Circuit's express direction, the Court thus treats Roper as still good law.

Indeed, some important differences between the interests in Lewis and Roper present themselves upon close examination. Lewis specifically addressed a plaintiff's interest in recovering attorneys' fees as a prevailing party, rendering that interest wholly dependent on the success of the underlying substantive claim. Roper dealt with a different interest in attorney expenses—the diffusion of costs and fees that a plaintiff has already incurred through the litigation process. Plaintiffs potentially generate these expenses, such as the filing fee, just by litigating. Spreading these expenses across the class does not depend on the plaintiff prevailing or on any statutory right to recover expenses.[7] This distinction serves to remove a plaintiff's

---

[7] For example, a plaintiff, in an opt-in class, could seek to spread his litigation expenses across all class members. Alternatively, in an opt-out class, a plaintiff could seek, with notice, to provide that any settlement payments will first reimburse him for his litigation expenses, thus spreading these expenses across the class.

11

interest in diffusing these expenses from the success of the underlying substantive claim. The Court thus reconciles Lewis and Roper on that vital difference.

  At the motion hearing, Demmler, for the first time, sought to invoke this interest in diffusing litigation expenses as a fourth basis for finding his individual claims not moot. However, this mere reference to the interest, without more, cannot successfully invoke the interest in a manner sufficient to stave off mootness. While Bais Yaakov did reserve on the question of what exactly a plaintiff claiming this cost diffusion interest must show, see 798 F.3d at 50 ("Of course, neither is it clear whether we even need to engage in such a factual inquiry to answer the 'continuing economic interest' inquiry under Roper."), Genesis Healthcare emphasized that "Roper's holding turned on a specific factual finding that the plaintiffs' possessed a continuing personal economic stake in the litigation." 133 S. Ct. at 1532 (emphasis added). This, combined with the bedrock principle that "[w]hen challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's jurisdiction cannot simply allege a nonobvious harm, without more," Wittman v. Personhuballah, 578 U.S. ___, ___ (2016) (slip op. at 5-6), convinces this Court that Demmler's failure to offer any factual predicate—an affidavit from himself or one of his attorneys describing the fee arrangement, the contract governing his fee arrangement with his attorneys, or even an allegation in the Complaint that he has borne or is bearing costs or fees which he wishes to spread across the class—to establish this interest precludes the Court from accepting it as a basis to find his individual claims not moot. Accordingly, the Court ALLOWS ACH's motion as to Demmler's individual claims, which are DISMISSED.

B.  Class Claims

The Court next turns to Demmler's class claims. And just like Demmler's individual claims, controlling Supreme Court and First Circuit precedent make clear that these claims are likewise no longer viable.

In Cruz v. Farquharson, 252 F.3d 530, 533 (2001), the First Circuit held moot plaintiffs' challenge to the Immigration and Naturalization Service's ("INS") failure to process their immigration petitions when, during the pendency of the litigation, "the INS had adjudicated and approved" all relevant applications. The Cruz plaintiffs tried to argue that a "different, more relaxed conception of mootness should apply because th[at] suit was intended all along to be a class action." Id. That argument, however, failed. "Despite the fact that a case is brought as a putative class action," Cruz held, "it <u>ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved.</u>" Id. (emphasis added). And just eight months ago, the First Circuit specifically relied on Cruz for the proposition that a plaintiff cannot rely solely on "its interest in having a class certified" to defeat a mootness argument. See Bais Yaakov, 798 F.3d at 50 (citing Cruz).[8]

Demmler finally invokes the argument that ACH's payment constituted a "pick-off attempt" of a named plaintiff in a class action, utilizing a strategy rendering his claim inherently

---

[8] Cruz did acknowledge, without accepting, the possibility that "a class action may endure even though the named plaintiff's claims have become moot, as long as a motion for class certification is pending at the time that mootness overtakes the plaintiffs claim," see 252 F.3d at 534 n.3, and Bais Yaakov observed that, while potentially elevating form over substance, "[t]o parry these possible [pickings off of named plaintiffs], knowledgeable plaintiffs' counsel will simply file motions for class certification with the complaint." 798 F.3d at 54. However, Demmler cannot (and does not) invoke this protection, as he had not (and still has not) filed a motion for class certification when ACH filed its motion to dismiss. Had he moved for certification, that would likely present the question of whether ACH's pre-suit payment would circumvent that rule, but the Court need not resolve that issue here.

transitory. In South Orange, another session of this Court decided that Cruz "suggested that a defendant's decision to quickly satisfy the named plaintiff's claims and moot the class action might trigger the 'inherently transitory' exception" to Cruz's general rule. 2016 WL 1441791, at *6 (citing Cruz, 252 F.3d at 534-35). South Orange involved a "proposed class action . . . about an unsolicited fax allegedly sent in violation of the Telephone Consumer Protection Act ('TCPA'), 47 U.S.C. § 227." Id. at *1. Just like here, the South Orange defendant had tendered full relief to the individual plaintiff, who—while not having yet moved for class certification—rejected the check. Id. South Orange, relying on "a flock of TCPA cases . . . demonstrat[ing] a widespread whac-a-mole practice aimed at picking off a named plaintiff before class certification," id. at 6, held that, "because the class issues will likely evade review," this tender did not moot the class claims. Id. at 7.

Assuming without deciding that Cruz allows for an "inherently transitory" exception to its general mootness rule, this case contains a key factual distinction from South Orange which compels a different result. While Chief Judge Saris found a pattern of putative TCPA class action defendants tendering full relief to named plaintiffs before certification, no such record exists here. Demmler has offered no evidence that any ch. 93A defendants, let alone ACH specifically, has a pattern of engaging in such conduct.

Demmler argues that the Court should infer that ACH sought to thwart judicial review by satisfying only Demmler's individual claims, and not those of the class members. On this record such an inference is untenable. ACH discontinued, prior to Demmler's demand letter, the very product about which Demmler complained, and made Demmler whole in response to his initial

demand.[9] Demmler, meanwhile, submitted no other evidence supporting the thwarting inference. Cruz's observation that "[o]ne swallow does not a summer make" thus applies in this case. See 252 F.3d at 535. Thus, the Court ALLOWS ACH's motion to dismiss Demmler's class claims [10]

IV. CONCLUSION

For the foregoing reasons, ACH's Motion to Dismiss, or Alternatively for Summary Judgment, Doc. No. 14, is ALLOWED, and this case is DISMISSED.[11]

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[9] Demmler has complained that ACH's assertions about discontinuing the products have not been tested by discovery. Demmler has been aware of this representation by ACH since receipt of the response to his first demand letter prior to filing suit, and has had ample opportunity to seek confirmation from ACH, to request focused discovery on this point, and/or to conduct independent research by making observation (for example, by looking in the store at which he purchased the sauce about which he now brings suit).

[10] It bears particular emphasis, given how much Demmler relied on it both in his brief and at the motion hearing, that Campbell-Ewald's statement that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted," 136 S. Ct. at 672 (emphasis added), does not alter this analysis. Here, unlike in Campbell-Ewald, Demmler does not have a live claim. This one sentence, distinguishable on its core point (whether the individual plaintiff has a live claim) does not overrule Cruz's clear holding. While other courts have held differently, see, e.g., Chen v. Allstate Ins. Co., 2016 WL 1425869, at *1 (9th Cir. Apr. 12, 2016), those courts did note face this Court's precedential landscape. See Bais Yaakov, 798 F.3d at 50 (citing Cruz, 252 F.3d at 533).

[11] Because the Court finds this case moot, no comment on the merits is necessary. See Redfern, 727 F.3d at 83-84 ("When a case is moot—that is, when the issues presented are no longer live or when the parties lack a generally cognizable interest in the outcome—a case or controversy ceases to exist, and dismissal of the action is compulsory.") (quoting Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001)).